UNITED STATES OF AMERICA
DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ●

THOMAS SCHRAMM

     plaintiff                            Case No.

v.                                         Hon:

NEENAH PAPER MICHIGAN INC.

     defendant
_____/

Attorneys for plaintiff:
NACHT & ROUMEL, P.C.
Nicholas Roumel (P37056)
101 N. Main St., Ste. 555
Ann Arbor MI  48104
734-663-7550
*nroumel@nachtlaw.com*

MARCOTTE LAW PLLC
Wendy Marcotte (P74769)
102 W. Washington St., Ste. 217
Marquette MI 49855-4350
*wendy@marcottelaw.us*

● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ●
    .

## COMPLAINT AND JURY DEMAND

Plaintiff makes his complaint as follows:

### Parties/Jurisdiction/Venue

1.    Plaintiff Thomas Schramm ("Mr. Schramm") is a resident of Munising,

Alger County, Michigan.

2.      Defendant Neenah Paper Michigan Inc. ("Neenah") is a Delaware corporation doing business in Michigan, with its resident agent at The Corporation Company, 40600 Ann Arbor Rd. E. Ste. 201, Plymouth MI 48170.

3.      The events giving rise to this lawsuit occurred at Neenah's manufacturing plant, the Neenah Munising Mill, located in Munising, Alger County, Michigan ("the plant"), where Plaintiff was employed.

4.      Jurisdiction is proper in this court under the diversity jurisdiction provisions of 28 USC § 1332 (a) (1), as Plaintiff is a resident of Michigan and the amount in controversy exceeds $75,000.

5.      Venue is proper in the Western District of Michigan per 28 USC § 1391 (b) (1) and (2), as the cause of action occurred in Alger County, Michigan.

**Facts**

6.      Mr. Schramm was employed with Neenah as its Fire Chief, and he was a member of the United Steel Workers Union. He began his employment with the plant's predecessor owner, Kimberly Clark, on October 6, 1986.

7.      He performed his job capably and was a valued employee.

8.      On February 19, 2021, there was a major chemical spill caused by operations at the plant. At approximately 8 AM, a discharge line from a bleach bulk storage line failed, causing the spill of approximately 2000 gallons of bleach within the plant.

9.      The plant acted to contain the immediate risk to employees, the environment and the community. The first call for service was made by an employee at approximately 8:41 AM, to Alger County Central Dispatch (911). The employee

requested that Munising Fire be dispatched for a major chemical spill and identified the chemical as bleach. The employee further advised that they were in the process of evacuating the plant, as the spill was creating a chemical reaction.

10.    Both the Munising and Rock River Fire Departments were dispatched, as well as the Alger County Sheriff's Office and Alger County EMS.

11.    At approximately 8:47 AM, the first emergency responders arrived on scene, including but not limited to fire and EMS. Five employees were transported to Munising Memorial Hospital for treatment.

12.    News outlets picked up story from scanners and began posting on social media as early as 9:50 AM.

13.    Plaintiff's wife learned of the spill from social media and called her husband, the Plaintiff, at approximately 9:53 AM to make sure he was okay.

14.    At 9:59 AM, the Plaintiff, Mr. Schramm, called to report the spill to the Michigan State Government Department of Environment, Great Lakes, and Energy ("EGLE"), formerly known as and still commonly referred to as "DEQ" (the Michigan Department of Environmental Quality."

15.    Neenah terminated Plaintiff's employment, effective March 1, 2021, because he made a report of the bleach spill to EGLE, which responded to and monitored the cleanup.

16.    Neenah stated in Plaintiff's termination letter of March 2, 2021, that in making that report, Plaintiff violated his "signed confidentiality agreement."

17.    Neenah further explained, in response to a Union grievance, that:

Tom placed an unauthorized call to the DEQ acting on behalf of Neenah, as clearly shown in the incident report he published (attached). The only employee authorized to make such a call outside of the Mill Manager, is our Environmental Engineer. This is a violation of Tom's signed confidentiality agreement, which states: "I will assume any particular information about the Corporation's business is confidential until I am informed it is not or until it has been published or is generally or publicly known outside the Corporation or (in the case of information about processes, procedures, machinery and equipment) until it has been recognized as standard practice outside the Corporation.

18.     These reasons are pretext, for reasons including but not limited to the following:

a.      The confidentiality agreement is intended to protect trade secrets and proprietary information, not industrial accidents.

b.      To the extent it may apply, before Mr. Schramm made his report to EGLE, the bleach spill was publicly known and reported in social media.

c.      On information and belief, there is no rule or policy forbidding Mr. Schramm, as the plant's Fire Chief, from making reports of fire or other environmental hazards to governmental bodies.

## Legal Allegations

### Count I – Whistleblower Protection Act

19.     EGLE is a public body as defined by the Whistleblower Protection Act, MCL § 15.361.

20.     Plaintiff engaged in protected activity under MCL § 15.362 when he made his report of the chemical spill to EGLE.

21.     Defendant was aware of Plaintiff's protected activity.

22.     The Whistleblower's Protection Act, MCL § 15.362, states in relevant part that:

4

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

23.     At all relevant times, Plaintiff acted in good faith and believed the report to be true; he was borne out in this good faith belief by the public response, and the plant manager's public statements verifying the spill and thanking the first responders.

24.     Defendant terminated Plaintiff because of his protected activity, as described above, in violation of the Whistleblower's Protection Act, MCL § 15.362.

25.     Defendant's violation of the Whistleblower Protection Act has damaged Plaintiff as alleged herein and below.

### Damages

26.     As a direct and proximate result of defendants' actions, Plaintiff suffered damages as follows:

a.     *Economic Damages* – lost wages, fringe benefits, and earning opportunity resulting from his termination, attorney fees, incidental and consequential damages.

b.     *Non-Economic Damages* – harm to reputation, emotional distress, mental anguish and continuing mental anguish, denial of social pleasures and enjoyment, inconvenience, embarrassment, ridicule, humiliation, mortification, fear, and/or outrage, as warranted by the proofs.

27.     At all time's relevant, Plaintiff has made a good faith effort to mitigate his damages.

**Jury Demand**

Mr. Schramm demands a jury trial.

**Relief Requested**

**W H E R E F O R E**   Plaintiff Thomas Schramm requests this honorable court

grant him the following relief:

a.       In excess of $75,000 damages against Defendant, as warranted by the law
and the proofs, including:

   i.       economic and non-economic damages as described above;
   and

   ii.      the greatest combination of exemplary or emotional distress
   damages as permitted by law;

b.       costs and pre- and post- judgment interest as permitted by law;

c.       attorney fees as permitted by law;

d.       reinstatement of the Plaintiff to his former position, with full restoration of
back pay, fringe benefits, and seniority rights, in addition to his other damages;

e.       other remedies as are just, appropriate, and permitted by law or equity.

Respectfully submitted,

Attorneys for Plaintiff:

NACHT & ROUMEL, P.C.

*s/Nicholas Roumel*

Nicholas Roumel

*s/Wendy Marcotte*

May 5, 2021                    Wendy Marcotte